Case number 243655, USA v. Ankita Singh. Argument not to exceed 15 minutes per side. Mr. Meehan, you may proceed for the appellant. Good morning and may it please the court. Andrew Lemons of Williams & Connolly for the appellant, Ankita Singh. I'd like to reserve three minutes of my time for rebuttal. The court should vacate Dr. Singh's conviction and remand for a new trial because of three errors that go directly to the disputed issue of Dr. Singh's intent. With respect to the first issue in our brief, which relates to the jury instruction on the meaning of willfulness, we're aware obviously that this same issue in a similar posture is before this court in a pending case, that's United States v. Clay, that was argued in January. I'm prepared to address that issue if the court would like to today, but would otherwise propose to focus my argument on the case that hasn't been decided yet. I say you probably should not spend time on a case that hasn't been decided yet. May I please ask one question about the jury instruction, Judge Clay? Before you move to the second two issues, I'm curious about the argument that the jury instruction here and which is the same pattern jury instruction that's used in the Clay case, that doesn't include an intent to engage in unlawful behavior. That's my understanding of why you think it's erroneous. Is that correct? That's correct, Your Honor. The Bryan case holds that when willfully is required, you need, the government needs to prove beyond a reasonable doubt the defendant knew what she was doing was unlawful. Right, and in this case and in the pattern jury instruction, we have a specific instruction to the jury that they have to find an intent to defraud. How does that not cover the same ground? They are separate elements, Your Honor, in the offense and they have to have some separate meaning. There are statutes, for example, the mail and wire fraud statutes which require an intent to defraud but do not require willfully. The intent of fraud, as I've always understood it, is that it is the intent to deceive a person for taking something from them, which is separate from here, which is the knowledge that the defendant's conduct was unlawful. That there must be some separate meaning as to each of those elements and if you collapse them together, it doesn't quite work. Can a jury find an intent to defraud like, you know, somebody intended to cheat and deceive for financial gain without having an intent to engage in unlawful conduct? Like, is that just, would somebody come up here and say, like, we have a jury verdict that, you know, it's completely incompatible. Like, how does that actually work? Obviously, I know this was an issue in the Clay argument. There's the question of omission, where there could be an intent by omission to deceive in something from the other without knowing about a duty to disclose, which would create the actual unlawful conduct. There is the, I suppose, hypothetical of every college student who calls home asking mom and dad for money and perhaps misstates the reason why the money is gone. That is certainly an intent to deceive the parent to take property from them. I don't think we would say that student knew their conduct was technically violating the wire fraud statute. So, I do think there are situations when that would occur and I think, more importantly, there needs to be some, there needs to be something that each of those stand for because Congress, when it prescribes statutes, uses both elements sometimes and only uses the intent to defraud other times. So, I'm understanding that, you know, essentially we need the jury to find that the defendant, you know, not only knew that they were doing fraud, but that that type of fraud or cheating that they were doing was unlawful or that they intended to break the law. I think that's right, Your Honor, and the record here proves that point. The government argued to the jury that it was on Dr. Singh to know what she was doing was wrong. They essentially flipped the burden back to her and so in the absence of the instruction on willfulness that Bryan requires, you have the government making arguments that would otherwise be impermissible and certainly contrary to the instruction. So, I think, in our view, the record here proves the problem with the absence of the law. Is your position that it was a plain error that we have to review it under the plain error standard, right? Otherwise, you might have be deemed to have waived it by consenting to the jury instruction. Your Honor, we are certainly here on on plain error and we don't dispute that. I do think there is no question that we have satisfied the invited error standard given that we have a constitutional error and that it is an error that goes to an element of defense. The question is whether we've satisfied plain error. We think this court, certainly the Supreme Court's decision in Bryan, the text of the statute, the decisions and all of the other circuits applying Bryan to the health care fraud statute, as well as this court's decisions applying Bryan in a number of cases, criminal cases, to a number of criminal statutes where willfully is required, makes that error plain. By the way, just as a side point, where is your client now? Is she out on bail, a pending appeal? Is she in jail already? Our client is incarcerated, Your Honor. She is. So, it's only a 26-month sentence. Yeah, and my understanding is that will run for at least another year, followed by then, of course, any immigration consequences. Right. I mean, time is ticking. I mean, she has about, what, one more year of incarceration at this point. If there's no other questions, I'll move to the hearsay issue. Thank you. It was an abuse of discretion for the court to exclude statements that would have provided key evidence of Dr. Singh's intent during the scheme to defraud, specifically that she thought there were other providers involved in her conduct and that she thought the work she was doing was legitimate. That is, there are two flaws that we see in the District Court's Rule 8033 analysis. First, these were statements during the alleged scheme. 1347 is a continuing offense. The government alleged a scheme occurring between 2018 and 2021. There are counts charged in the indictment that occur after the statements at issue that were excluded. And the statements, if you look at the record, and this is 90-1 on the record, are a discussion of continuing and ongoing activity. It is broader than a singular event and it is indicative of what Dr. Singh understood at the time about the things she was doing. There's also the second error in the District Court's analysis. There's no indication here that she had any understanding or knowledge or opportunity to reflect or fabricate, which are situations where this court has declined to apply 8033. It was a private insurance representative contacting her. The cases where this court has found an opportunity to fabricate, the Gregg decision, and then the Lemaster and Menendez case, one of those, of course, being from the Seventh Circuit. It's a criminal investigation and the defendant is aware of the criminal investigation at the time the statement is made. This is very, very different. There's also no evidence in the record, even though there was a phone call and a voicemail that she received, no evidence that that would have given her any reason or opportunity to reflect. This is the one from Christine Whittaker? Ms. Whittaker, yes, Your Honor. March of 2021, is it? It's March of 2020. And the government, as we look at harmlessness, the government used this as the event, giving Dr. Singh knowledge that something was wrong. The government pointed to her state of mind at the time of this call, but then argued against Dr. Singh being allowed to introduce evidence from that call that would have contradicted her state of mind. Intent was the key issue in the case. Whether she received a warning, what that warning was, what she understood about that warning, that would have all been a much closer question if this evidence had come in. You know, in deciding this hearsay issue, to get her state of mind, if the statements are admissible, in deciding the hearsay issue, do we have to decide the weight or admissibility of the evaluation of the patients by other medical professionals? Because if it's inconsequential what the other medical professionals would have said, would that be something approaching harmless error, so to speak? No, Your Honor, I don't believe you need to. The government charged a theory of fraud based in part on the idea that Dr. Singh knew there was no one else involved. And we're talking about the issue related to her state of mind. And if her state of mind was there had been some work done with a medical professional prior to her receiving the charge that she then signed, that contradicts the government's case. That is relevant and admissible evidence, but I don't think you have to reach that question. It's certainly not an issue we've briefed or the government has argued. In order to determine that the statements should have been admitted, that the violation of the hearsay of 8033, or that the improper application of 8033 was not harmless error, the remedy there is to vacate and let the district court address the issue on retrial. But that's what Judge Clay is asking. Also, I guess what I assume to your third point about whether lay testimony was proper to show that she should have known that she had to examine the patients personally. I think that's right, Your Honor. And the government should have been required if they were going to pursue a theory that the absence of a medical examination is evidence of fraud, which was a point they used to argue not only to introduce lay testimony, but to argue intent and to introduce other evidence. There is a wealth of evidence that came into this case only on the basis that there was no medical examination. And so if that evidence was used to argue she had bad intent, that evidence was used to argue repeated activity of fraud, if that was going to be the case, that connection between the standard of care and the ability to make a medical necessity determination should have been presented by an expert and not decided at the outset by the district court. Say that, do you have direct authority for that point? Well, the standard of care for a medical professional, we think, is squarely within the bounds of Rule 702. The district court's authority cited for the proposition were both decisions where the government presented an expert to make that connection. And so I don't think this court has ever or any court has specifically held that, but between 702 and the evidence or the cases the district court relied on, it's a question that should have been decided by the district court. What did the district court say to justify allowing the lay testimony, non-expert testimony on this point? It was, the district court's holding pretrial, the government need not present an expert when the question, on the issue of medical necessity generally, when there has been no exam. The district court premised its decision on the lack of an exam. I see my time's expired. This was on a motion in limine, right, Fowler? That's correct, Your Honor. Thank you. Thank you. Apologies. Of course, my main notepad goes missing right at the time I get up here. I apologize, Your Honor. May it please the court, Matt Call for the government. The court has already talked in depth about the applicable standard of review here for the jury instruction issue, plain error. That's if it even gets there. This is an instruction that both parties requested, and so the court could find waiver. We recognize that the court has discretion to find that it was an invited error and that it was constitutional or significant enough so that it may consider it, but that still places the bar very high for the defendant on the jury instruction issue. And simply put, we don't believe that the defendant has cleared it in this case. There are no cases in this court finding that the instruction that was given was improper. In fact, it is this court's pattern instruction for health care fraud that was given without objection. So we believe that the instruction in this case which covered everything that is necessary to prove the willfulness under the Bryan standard. The jury was instructed that it couldn't be because the defendant had to have acted voluntary and intentionally and not because of mistake or some other innocent reason. That's at page ID 2496. Doesn't the instruction seem contrary to Bryan? I don't believe so, Your Honor. The instructions, this court's instructed the district courts to give, or excuse me, the Sixth Circuit pattern at least has instructed the district courts to give for the better part of the last two decades, I believe. And so they're not inconsistent with Bryan when they include an intent to deceive or cheat, and particularly when you include the good faith instruction sort of as a backstop. Good faith on the part of the defendant simply is inconsistent with an intent to defraud, page ID 2496. If an honest mistake in judgment or an honest error in management does not rise to the level of criminal conduct and the government bears the burden, carrying over on a page ID 2497. So this... Does anyone have an intent to cheat or deceive for financial gain and not have an intent to engage in unlawful conduct? Are you essentially telling me that these two are one and the same and therefore the jury doesn't need to be instructed separately? I think in this particular instance, yes, Your Honor, I am saying that. That covers all that is necessary for Bryan willfulness. Why in this instance? What instance would it not work? I can't think of a situation in which it would not work, Your Honor. In Bryan, it doesn't specifically say, it begins by saying generally it means an intent to break the law, but it also says or to act with an improper purpose. And this court's pattern instructions fully encapsulate that the government was required to prove beyond a reasonable doubt that the defendant acted with an improper purpose. So based on a plain error standard of review, which is applicable here, if there was error, it certainly wasn't... If you're telling us that improper purpose is all that's needed, then, I mean, would an instruction that doesn't even have intent to defraud work? Just like to be bad? I don't think that would work. The government had to prove that she had an intent to deceive or cheat. That's stronger than even just acting with an improper purpose. What's clear and where I think they're trying to elevate this is to require us to prove that the defendant knew she was violating a specific provision of the law. And 1347B says there's no such requirement for health care fraud purposes. I don't understand them arguing that. They just, I think, are saying that the government had to prove, though, she knew what she was doing was unlawful. Not that it had to violate section XYZ of the Medicare law. And I think that the instruction that was given here that includes an intent to deceive or cheat to bring about financial gain that couldn't be because of mistake or innocent reason and that the government had an obligation to prove a lack of good faith on plain error review with this court's pattern instructions is not reversible error. They've pointed to no case from this court in which this court has ever required the additional language that they're suggesting now after trial should have been given. Some of this may turn out, this United States v. Clay case that counsel points out has been pending since January may answer our questions here. It may, Your Honor, and that may, I guess, then turn this into an error that might be plain or obvious, but it still wouldn't satisfy the third and fourth requirements of plain error review that it must affect her substantial rights and seriously affect the... It might affect her rights if it would turn out that we think a jury could have found that she was not guilty. Certainly. But when you look at the fourth factor, did it affect the fairness or integrity of the proceedings? She got the instruction that she asked for. How is that unfair? So we don't think even if the Clay decision comes out and finds that the jury instructions, that this court's pattern instructions, which were given verbatim in both cases, we still don't think that it would be reversible. There's multiple Sixth Circuit cases, Anderson, Bolos, Hunt, and Ray, I'm going to pronounce this wrong, I'm sure, Ray Thada, discussing the elements in health care fraud. No mention of those, the word willfulness doesn't appear in any one of those cases. So to say that the district court was derelict in its duty by not adding that against the party's wishes or over the party's suggestion, we simply disagree with that proposition. Tell me about the 8033 business about not allowing the notes from that Christine Whitaker. Certainly, Your Honor. We believe that it was properly excluded. It was rank hearsay. It was the defendant's out-of-court statement. She was offering it to prove the truth of the matter asserted. So under Rules 801, I believe it's A and 801C, that's hearsay. It didn't meet the 8033 exception for a then existing mental, emotional, or physical statement. And I try to emphasize the word then because it wasn't her state of mind then. When the investigator called her, she asked her, had she previously treated a patient named Dolores Brown? And I believe the date is in the notes. I believe, let's see if my glasses can get it, had she treated this person on October 10th of 2019? And she's asked about this on March 4th of 2020. And by the way, she's returning the investigator's telephone call. So she's not asking her about her state of mind on March 4th of 2020. She's asking her about a patient she had treated five, six months earlier. That's not a then existing state of mind. But she's talking about, but she more generally talks about, well, there was a patient portal she logged into and she had every reason to believe that, or thought other physicians had examined these people. She didn't remember Brown, you know, DB, I guess was, you know. I apologize. I have the unredacted. So if I stepped over, I apologize. But the fact is that this was right in the midst of the period of which you allege this healthcare fraud taking place both before and after the call on this March 4th, 2020. It is, Your Honor, but she knew she was being called by an insurance company auditor and she was calling that person back. So she had an opportunity to be worried about it and to come up with a story to cover herself. It'd be no different than an individual who was under investigation for tax fraud. And let's say they had deducted personal expenses on their company's business return in 2019, 2021, and they were being investigated for an ongoing tax evasion conspiracy and they asked about the expenses and if they say, well, I thought I was allowed to do that. But she wasn't under investigation. This was for her, just a call out of the blue that she returned 20 minutes later. It was a call from an investigator from a Medicare investigator from an insurance company. Do we know that? Is there evidence that she knew? I mean, she knew the person's name, maybe that they were from an insurance company. Is there evidence that the government put in the record that she knew it was like a fraud investigator? I can't point to a particular page on that, but you can infer that when a person answers a... before she's going to discuss an ongoing patient with someone who calls her out of the blue, she's going to make sure that the person has the right to that information. She could figure out that when she's actually calling and speaking to the person. Your argument is like when there is a voicemail, then she has 20 minutes to, you know, make up a story. My question is, what is our evidence of the voicemail? I don't believe we have the evidence of the voicemail in the record, Your Honor, but... So we don't know if she was really tipped off, that there was any sort of investigation as to her or anybody else. I can't imagine that any doctor is going to return a call out of the blue from an unidentified person regarding a patient without having some indication who they are calling. We don't even know if it was a call about a patient because we don't know anything about the voicemail. We do know, Your Honor, that the investigator had been attempting to reach her for some time. On the same page, it's page 2587, she left a message for her at a hospital. February 12th of 2020, this investigator called the phone number for Singh. An unknown female said Singh no longer works there. Did she get that information and now had time to stay in? We can't say, Your Honor. You can't say, but you're asking us to draw that inference. We are, Your Honor, but she's got to show that she was offering her then existing state of mind. And it wasn't her then existing state of mind. She was being asked about a patient she had treated months earlier. And in the course of a 20 minute telephone call, when she knows, certainly by the time they get into the phone call, she's not going to get past the introductory remarks without knowing that this is a fraud investigator, an investigator from Humana, which is a Medicare representative. She has a reason to fabricate it that way. Whittaker was investigating another company, not one of the two that Singh was doing the chart review for. It was not from those companies. It was from the insurance companies that were out the money in this case. So if... So you're saying that like once they identified themselves at the beginning of the telephone call, by the whatever point of the telephone call that she's answering questions, it's in that time that she's deliberating and lying and that's why it shouldn't be an 8033 exemption to the hearsay rule? That's not what the district court seemed to reason. The district court's reason was that she had an opportunity to fabricate. If she wanted to get this information in, she could have taken the stand and testified to it and subjected herself to cross-examination. But if this evidence is going to be permitted, then in all cases, defendants are going to try to get in statements that they made to investigators that were exculpatory. If the agent knocks on the door and interviews a target in an investigation and the guy says, well, jeez, I don't know so-and-so, I didn't know so-and-so was dealing drugs... What's your best case close to these facts that excluded such testimony? I had a feeling you were going to ask me case names and I'm not a case names guy, Your Honor, so if you'll permit me a moment to reference my notes on that. The district court mentioned, I think, LeMaster maybe, where the FBI, where the defendant knew that he was under investigation by the FBI and 24 hours later... Gregg, G-R-A-G-G, LeMaster, and Mendez are all good case on it and then... That's what I... Mendez, see, is totally... That was an attempted kidnapping where he comes into the police two days later and gives an exculpatory statement. And I believe my colleagues cite the Neely case, which is a Seventh Circuit case and not binding, but they use it as persuasive authority. The time it takes to write a letter or a sufficient time to fabricate. And I think that it doesn't take very much time to fabricate when you know that your information is under investigation. If she had made an off-the-cuff remark to a colleague, hey, what are you doing today? I am doing this, we'd be looking at a different hypothetical. She was being asked about things she had done months earlier, thus learning that her activities were of concern and came up with that story towards the end, assuming that the notes were written in chronological order based on the conversation. I think we understand your... What about the government allowing a lay witness to testify as to whether, though, she should have known that she had to have another doctor look at her, these charts? So I read the testimony in the record differently than my colleagues because I don't believe there was any expert testimony provided here. The fraud in this case was not complex. This was not a case where medical doctors are needed to testify whether a particular test was needed based on a patient's background and symptoms and test results. The fraud here was relatively simple. Did she lie on these forms when she said, I developed a doctor-patient relationship, I treated this person, I assessed their symptoms, I evaluated their pain, and when you have... A patient can come in and say, I've never met this woman, I was never treated by this woman, I didn't have knee pain, I had no knee for a brace. That's all information that the patients can testify based on their personal knowledge. So no expert is necessary to testify that it's not medically appropriate. Can there ever be a doctor-patient relationship where there's no either like a virtual or physical examination? I think there are rules in which telehealth is permitted, but we're nowhere near those here because she is certifying that I treated, I examined, I prescribed, and she never did. She was signing off on these records as if she personally examined the patients, and there was no evidence that she ever did. So she's saying, this person is being treated by me. Do you have to see, again, like virtually, can you see someone, or do you have to see them in person to treat them? Can somebody like, you know, put in a lot of information and to, you know, write a, I don't know, an email about their symptoms or things like that, or be interviewed by someone else and there be a prescription? Can it ever happen? Yes, but that's not the evidence that that's what happened here. There was no evidence of any of these patients ever being examined by anyone. They got calls out of the blue from telemarketers, and they said they didn't need them, they didn't want them, and they showed up at their door unwanted. Right, but to the extent that your theory is, you know, if she thinks that, you know, a clinician or somebody is seeing them, you told me that this case rests on the fact that she still lies, right? That she still says, I have a doctor-patient relationship. I treated somebody. I mean, I can read it here. I, the patient is being treated by me, things like this, right? You're saying that those are all lies. Yes. Right, but how do you know that a physician can't, within the reasonable practice of medicine, certify these things without knowing what the standard of care is? Like, you just told me that there maybe are some instances where a doctor can say, you know, and can prescribe something or can say somebody is being treated by me without ever seeing them. But we're not talking about a situation in which that defense was actually made. The defense had no real answer for the fact that she never saw, touched, examined anything of those patients. If that was a defense that they had pursued, we might have sufficiency issues, but that's not been raised. Ultimately, on the expert witness question here, neither of the Medicare investigators or auditors offered an opinion on medical necessity. They testified to what they did in their job. And under the Manzano case from this court, a Medicare auditor and investigator can testify what they did in their job without being qualified as an expert. And the third witness, Dr. Phelps, testified as to what he trained Dr. Singh to do. Sure, he had specialized knowledge, but he didn't offer an opinion. He testified as to what he trained her. That's not medical opinion testimony. That's testimony by a... He's trying to claim they should have people for consequences so that they'll follow the protocol associated with the training. So that sounds like that would have some specialized knowledge associated with that. It is specialized knowledge, but he didn't... To qualify as expert opinion testimony under 702, it's got to go further where he offers an opinion that in his opinion, X, Y, and Z are necessary. And that was never offered here. He testified as to what she was trained. That's sort of a different issue. I mean, she's claiming the lack of expert testimony, but experts should have been required to link her to whether she could have done this chart review without personally examining... And I think in this particular case, Your Honor, it's squarely a jury issue. A jury can determine whether or not her statements were false, whether she knew they were false, and whether she intended to deceive. I see my time is long since done, so I thank the court, and we ask that the court defer. Wait a minute here. Let's make sure there are no further... Counsel, make sure there are no further questions. We were just in the midst of asking you questions. I saw Judge Blumkatz check her watch, and so I knew my time was up. I apologize. Well, we overruled the light from time to time. I have nothing prior to that. All right. Thank you very much. Thank you, Your Honor. May it please the court. I have five very brief points. On the instructional issue, Brian's improper purpose that counsel referenced is defined in that case as the defendant acting with knowledge that the conduct was unlawful. It is not an invitation for the government to argue any improper purpose. This is a very specific improper purpose. Number two, as to the hearsay issue and what is in the record, there is a colloquy on what the evidence shows. Ms. Whitaker notated in her log, and this is at Appendix 30, that she left a voicemail asking for a return call. There is nothing more about any other substance. There is no indication that she identified herself or the reason for why she was calling. As to the reason she was calling, Ms. Whitaker testified it was a separate investigation that did not at the time involve Dr. Singh. So if there is an inference to be drawn, it is away from the position the government's articulating. And Ms. Whitaker testified that Dr. Singh was willing to speak with her, all counseling in favor that there was no opportunity or reason to fabricate. Finally, on the hearsay issue, my third point, this would be a drastic narrowing of 8033. The government was unable to point to any authority, and the authority it has cited is, as I believe Judge Gilman mentioned, drastically different. On the expert issue, the fourth point, when the government argued the lack of an examination was evidence of intent, that regardless of testimony from the physicians, that should have been supported, that the lack of examination was wrong under a standard of care should have been supported by an expert. So is that a sufficiency argument then, as opposed to, I mean I hear the government saying that Dr. Phelps or the insurance investigators were testifying to what they taught or things like that. Maybe there should have been an expert, but that seems maybe a sufficiency argument. I think each of the people we have identified in our brief did make a connection between the lack of an examination and the ability to determine medical necessity. Dr. Phelps spoke to that. That is at 2115 to 25. Ms. Robinson. Are there particular statements within his testimony that you think get beyond, you know, this is what I taught her, to like, you know, it's wrong if you don't do it this way? So I don't think that is how I would describe the statements. Let me look for them. While I'm making that last point, as to the hypothetical of whether there could be a situation where this was ever, well, let me say this. I know we have cited in our briefs the particular statements. We've called out those statements. As to the hypothetical as to whether there could ever be a situation, the fact that you are having that colloquy with the government, I think, confirms that you need an expert to tell you. We can all have our intuitions about what a physician could or could not do. We are not physicians. We would need a physician to tell us that. Thank you, Your Honor. We'd ask that you vacate and remand. Thank you. And the case is submitted.